UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**Rodney Alan Mattmiller,**

Petitioner,

v.

**Randy J. Kopseky,**
**Tom Adkins, and the**
**Attorney General for the State of Minnesota,**

Respondents.

---

Civil No. 05-1841 (PAM-JJG)

REPORT
AND
RECOMMENDATION

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on Rodney Mattmiller's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1). Mr. Mattmiller (Mattmiller) is proceeding pro se. The respondents are represented by Jean A. Burdorf, Assistant Hennepin County Attorney. The matter is referred to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I. BACKGROUND

This case arises from a state criminal prosecution that began in March 2002. Mattmiller was charged with two counts of failure to pay motor vehicle tax under Minn. Stat. § 289B.10(a); five counts of tax evasion under Minn. Stat. § 289A.63, subd. 1(b); and five counts of filing fraudulent tax returns under Minn. Stat. § 289A.63, subd. 2(a). A jury trial was held in December 2002 and Mattmiller was convicted of one count of failure to pay motor vehicle tax, three counts of tax evasion, and three counts of

filing fraudulent tax returns. Mattmiller claims that the convictions are defective due to multiple errors of law by the state district court.

## II. DISCUSSION

### A. Procedural Default

The respondents initially argue that, because Mattmiller did not exhaust all opportunities to advance his legal arguments in the state courts, he has lost the right to assert those arguments in his petition.

Before a federal court grants a writ of habeas corpus to a state prisoner, that prisoner must exhaust all remedies by fully advancing the underlying arguments in the state courts. Where a prisoner has appeal as of right to an intermediate state appellate court, with discretionary review by the high state appellate court, the prisoner must raise the arguments in a petition for review before the high court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999).

Once a prisoner has failed to properly raise an argument in the state courts, that argument is procedurally defaulted and cannot ordinarily be advanced in a federal petition for a writ of habeas corpus. But a procedurally defaulted argument may proceed where the prisoner demonstrates either (1) a procedural reason for the default that resulted in prejudice to the prisoner or (2) that failure to consider the argument will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To demonstrate a procedural reason for default, a prisoner must allege that some outside factor impeded the prisoner's effort to comply with procedural rules. *O'Rourke v. Endell*, 153 F.3d 560, 567 (8th Cir. 1998). To demonstrate a fundamental miscarriage of justice, a prisoner must allege facts that show actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995).

In his petition for review before the Minnesota Supreme Court, Mattmiller principally advanced three arguments to overturn his convictions. The first was that Minnesota law, for determining the residency of a taxpayer, was preempted by federal law. The second was that the district court erred by admitting evidence of certain prior misconduct. The third was that the district court failed to hold a hearing on alleged juror misconduct.

Here Mattmiller has set out fourteen arguments attacking his conviction in the state courts. The first, ninth, and twelfth arguments reiterate portions of his preemption argument. The thirteenth argument recites the juror misconduct question. Because the remaining arguments[1] were not raised in the petition for review before the Minnesota Supreme Court, they are procedurally defaulted. And Mattmiller has yet to advance any reason, notwithstanding procedural default, that these arguments should be heard. This Court accordingly confines its discussion to the two outstanding arguments.

---

[1] The remaining arguments may be summarized as follows. The second argument alleges that, by failing to apply federal law when determining residency, the district court violated the Privileges and Immunities Clause of the Fourteenth Amendment. The third argument claims that the definition of "domiciled resident," for state tax offenses, is void for vagueness and violates due process. The fourth and eleventh arguments challenge subject matter jurisdiction and, in particular, the authority of certain county attorneys to prosecute the case. The fifth and seventh arguments are that, when the district court admitted a state regulation into evidence and the regulation mentioned presumptions, the regulation violated due process by improperly shifting the burden of proof. The sixth argument is that the verdicts violated due process because they were inconsistent and were not unanimous. The eighth argument alleges selective prosecution. The ninth argument asserts that, prior to proceeding with a criminal prosecution, the state was required to bring a civil or administrative action. The tenth argument is that the state violated due process, under fair notice doctrines, by misrepresenting the residency status of airline pilots. The twelfth and fourteenth arguments claim that the district court erred by failing to admit evidence on airline pilots' timekeeping practices.

**Standard of Review**

Mattmiller brings his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254(d), which provides in relevant part,

> An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In his surviving arguments, Mattmiller does not assert that the district court made unreasonable findings under clause (2). *See Bell v. Cone*, 535 U.S. 685, 694 (2002) (holding that an unreasonable determination is one where the state court correctly applies the law but makes unreasonable factual findings). Thus the standard of review here is determined by whether the district court committed an error of law under clause (1).

A decision by a state court is contrary to law if that decision, evaluated objectively and on the merits, cannot be reasonably justified under existing precedent of the U.S. Supreme Court. A reviewing court may also examine decisions of inferior federal courts in factually similar cases. *Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir. 1999).

**C.     Preemption**

Mattmiller argues that the state district court erred by relying on Minnesota law for determining the residency of a taxpayer. He contends that, due to his status as an airline pilot and an air force reservist,

Minnesota law in this area is preempted by federal law.  On his status as an airline pilot, Mattmiller cites § 208(f) of the Federal Aviation Administration Authorization Act (FAAAA), which provides in relevant part,

> The pay of an employee of an air carrier having regularly assigned duties on aircraft in at least 2 States is subject to the income tax laws of only the following:
>
> (A)   the State or political subdivision of the State that is the residence of the employee.
>
> (B)   the State or political subdivision of the State in which the employee earns more than 50 percent of the pay received by the employee from the carrier.

42 U.S.C. § 40116(f).  On his status as an air force reserve pilot, Mattmiller cites § 511(a) of the Servicemembers Civil Relief Act (SCRA), which provides,

> A servicemember shall neither lose nor acquire a residence or domicile for purposes of taxation with respect to the person, personal property, or income of the service member by reason of being absent or present in any tax jurisdiction of the United States solely in compliance with military orders.

50 U.S.C. app. § 571(a).  Neither act offers a definition for the terms "residence" or "domicile."  *See* 49 U.S.C. § 40102; 50 U.S.C. app. § 511.

The Supremacy Clause provides that federal law shall have precedence over contrary state law.  U.S. Const. art. VI.  This clause is enforced through the doctrine of preemption.  For a state law to be invalidated by preemption, there must be a clear and manifest indication that federal law will preempt state law.  Silence by itself will not signal preemption.  *See City of Columbus v. Ours Garage & Wrecker*

*Serv., Inc.*, 536 U.S. 424, 432 (2002) (quoting *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 601 (1991)).  Preemption may proceed on several different theories.

Express preemption occurs where federal law explicitly overrides state law; where there is an outright or actual conflict between state and federal law; or where compliance with both state and federal law is physically impossible.  *Louisiana Pub. Serv. Comm'n v. Federal Communications Comm'n*, 476 U.S. 355, 368 (1986); 2 Donald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 12.4 (3d ed. 1999 & supp. 2005).  Preemption may be inferred where federal law offers a pervasive scheme of regulations in a particular area; where federal law requires uniformity and implicitly bars the operation of state law; or where state law interferes with the administration of federal law.  *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984); *Jones v. Rath Packing Co.*, 430 U.S. 519, 542-43 (1977).

Few federal authorities have considered whether state tax laws are preempted by federal law.  The U.S. Supreme Court has concluded that, where lumber harvesting and sales on Indian reservations were subject to comprehensive federal regulation, state taxation of the lumber was preempted.  *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 151 (1980).  That taxation issue, however, has little impact on the question presented here.

More apposite here are the questions examined by the U.S. Supreme Court in *Toll v. Moreno*, 458 U.S. 1 (1982), and by the Ninth Circuit in *Carlson v. Reed*, 240 F.3d 876 (9th Cir. 2001).  Both cases involved whether a university student was qualified for resident or nonresident rates of tuition.  *See Toll*, 458 U.S. at 15-17; *Carlson*, 240 F.3d at 878.  *Reed* concluded that, where federal law expressly required states to charge certain visiting aliens resident tuition rates, a contrary state policy was preempted.  *Toll*, 458 U.S. at 15-16.  *Carlson* examined a state law that provided, when a non-immigrant alien

6

established domicile in that state, the alien qualified for resident tuition rates. Here the question was whether state law on domicile was preempted by federal immigration laws on residency. The Ninth Circuit determined that, though both school law and immigration law included concepts of residency, they controlled entirely separate issues. Thus state law was not preempted. *Carlson*, 249 F.3d at 878.

The preemptive effect of a predecessor to § 511(b) of the SCRA was considered by the District of Kansas in *United States v. Kansas*, 580 F.Supp. 512 (D.Kan. 1984). The court considered a provision of the Soldiers and Sailors Civil Relief Act (SSCRA) that is substantially unchanged under the SCRA. It provided that, when a servicemember does not reside in a state, then military compensation received by the servicemember in that state shall "not be deemed income for services." *Compare Kansas*, 580 F.Supp. at 515, *with* 50 U.S.C. app. § 571(b). The *Kansas* court held that this provision did not control non-military compensation. Thus where a servicemember did not reside in a state, but received income in that state and was subject to income tax under that state's law, taxation was not preempted. *Kansas*, 580 F.Supp. at 515-16.

The leading preemption case in this area, however, has particular relevance here. The District of Minnesota considered the preemptive effect of a predecessor to § 511(a) of the SCRA in *United States v. Minnesota.* 97 F.Supp.2d 973 (D.Minn. 2000). The court considered another portion of the SSCRA that, as in *Kansas*, is substantially unchanged under the SCRA. *Compare Minnesota*, 97 F.Supp.2d at 977, *with* 50 U.S.C. app. § 571(a).

The *Minnesota* court began by reviewing Minnesota law on how residence and domicile are determined for purposes of taxation. *See Minnesota*, 97 F.Supp.2d at 981. That law remains substantially

identical to the applicable law here. Minn. Stat. § 290.014, subd. 1 provides that the income of residents is taxable. Minn. Stat. § 290.01, subd. 7 further provides,

> The term "resident" means any individual domiciled in Minnesota . . . .
>
> "Resident" also means any individual domiciled outside the state who maintains a place of abode in the state and spends in the aggregate more than one-half of the tax year in Minnesota, unless . . . the individual or the spouse of the individual is in the armed forces of the United States[.]

Methods for determining domicile, or for calculating the amount of time a person spends in Minnesota, are supplied by Minn. R. 8001.0300, a tax regulation. The *Minnesota* court considered whether two provisions from Minn. R. 8001.0300 were preempted by the SSCRA.

The first provision states a presumption that a person is domiciled where that person's spouse is domiciled. Minn. R. 8001.0300, subp. 2. The *Minnesota* court noted that the SSCRA prevents a servicemember from acquiring domicile solely because that servicemember is posted to a state. It then observed that the family of a servicemember may move to the state of posting, or conversely, that a servicemember and that person's spouse may be posted to separate states. Because the marital presumption was directly contrary to the directive of the SSCRA, the *Minnesota* court concluded that this provision of the rule was preempted. *Minnesota*, 97 F.Supp.2d at 982-83. Minn. R. 8001.0300 has since been amended so that servicemembers are not subject to this presumption.

The second provision supplies twenty-six factors for determining whether a person is domiciled in Minnesota. Minn. R. 8001.0300, subp. 3. Here the *Minnesota* court noted that the SSCRA only bars a state from taxing a domiciliary when a servicemember is present "solely" in compliance with military orders. It thus inferred that, when the servicemember is present in the jurisdiction for other reasons, the

SSCRA is not applicable. The *Minnesota* court then held that the factors under Minn. R. 8001.0300 for determining domicile were not preempted. *Minnesota*, 97 F.Supp.2d at 984.

The reasoning of *Minnesota* is equally applicable to Mattmiller's arguments under § 511(a) of the SCRA. Mattmiller has not claimed that his presence in Minnesota was solely due to military orders. Indeed this position would be contrary to the evidence in this case, which indicates that his movements were primarily incident to his duties as a commercial airline pilot. Thus the SCRA does not preempt a determination of domicile or residence under Minnesota law.

None of the previously discussed authorities, however, directly answer the issue of whether § 208(f) of the FAAAA preempts Minnesota law. Because Mattmiller was an employee of an air carrier, this statute governs whether a state may tax him. But neither the statute, other provisions of the FAAAA, or any incident case law offer further guidance on how residency is determined. *Cf. Kansas*, 580 F.Supp. at 515 (holding that compensation, not expressly controlled by the SSCRA, was subject to state tax law). And the statute does not clearly indicate that state law for determining residency was preempted, *City of Columbus*, 536 U.S. at 432, or permit the inference that concurrent operation of state law is foreclosed, *Carlson*, 240 F.3d at 878.

To prevail on his petition for a writ of habeas corpus, Mattmiller must demonstrate that the decision of the state district court cannot be reasonably justified under existing precedent. For his claim under § 511(a) of the SCRA, existing precedents do not support preemption of Minnesota law. For his claim under § 208(f) of the FAAAA, even if no existing precedents are controlling, there also are none that compel preemption. Because application of Minnesota law is reasonably justified under existing precedent, the petition cannot proceed on this basis.

### D. Juror Misconduct

Mattmiller's remaining argument is that the district court violated due process by failing to hold a hearing on purported juror misconduct. According to Mattmiller, after the jury rendered its verdict, several jurors stated that they thought they were mistaken about the law. The state district court declined to hold an evidentiary hearing on this issue.

It is a "cardinal principle" that, to preserve the independence of the jury, its deliberations are to be kept secret. *United States v. Olano*, 507 U.S. 725, 737-38 (1993). Reflecting this principle, jurors are ordinarily barred from testifying on events that arise during jury deliberations. Fed. R. Evid. 606(b); *see generally* 5 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 24.9(f) (2d ed. 1999). Thus a court is not required to hold a hearing on matters that only occur within jury deliberations. *See United States v. Brown*, 913 F.Supp. 1324, 1329 (D.Minn. 1996).

When determining whether there is juror misconduct, the principal inquiry is whether the jury reached a verdict solely on the evidence presented to it, or was prejudicially swayed by matters not in the record. *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Where there are irregularities in the jury deliberations, but no allegations of improper or prejudicial outside influence, then the district court is not necessarily required to conduct a hearing on juror misconduct. *United States v. Gianakos*, 415 F.3d 912, 921-22 (8th Cir. 2005).

A jury is presumed to follow instructions. *Olano*, 507 U.S. at 740. A hearing may be appropriate when jurors resort to matters outside the record in order to resolve their confusion about the law. *See, e.g., United States v. Gillespie*, 61 F.3d 457, 459 (6th Cir. 1995); *Bayramoglu v. Estelle*, 806 F.2d 880, 888 (9th Cir. 1986). Where jurors express an opinion about the meaning of the law in the course of

deliberations, without resorting to matters outside the record, then the constitutional rights of the accused are not compromised. *Grotemeyer v. Hickman*, 393 F.3d 871, 878 (9th Cir. 2004); *cf. Drew v. Collins*, 964 F.2d 411, 415-16 (5th Cir. 1992) (holding that, where a juror offered an accurate legal opinion on a possible sanction, but did not offer the opinion to sway jury deliberations, the right to trial by jury was not violated).

Here Mattmiller does not allege that jurors were influenced by matters outside the record, but only that jurors expressed confusion about how the law was applied. This confusion, by itself, does not constitute juror misconduct. And to determine the effect of this confusion, it would be necessary to pry into jury deliberations. Such an inquiry improperly compromises the independence of juries. Thus the decision by the state district court to deny a hearing was reasonably justified by existing precedent, and Mattmiller cannot advance his petition on this basis.

## III.   CONCLUSION

Mattmiller has raised fourteen arguments in his petition for a writ of habeas corpus. Because twelve of these arguments were not raised in a petition for review before the Minnesota Supreme Court, they are procedurally defaulted and should not be considered here. When the state district court ruled that Minnesota law on residency for tax purposes was not preempted by federal law, and when it denied an evidentiary hearing on purported juror misconduct, its decisions were reasonably justified by existing precedent. Thus Mattmiller is not entitled to a writ of habeas corpus under 28 U.S.C. § 2254 and his petition should accordingly be denied.

## IV.     RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mattmiller's petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED.**

Dated this 15th day of February, 2006.                    s/Jeanne J. Graham

                                                          JEANNE J. GRAHAM
                                                        United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by March 8, 2006. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.